UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SYSTEM TECHNOLOGIES RESOURCES, INC., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 16-30138-MGM |
| v. | ) ) ) ) | |
| UNITED VISION SOLUTIONS, LLC, *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION ON PLAINTIFFS' RENEWED MOTION FOR
DEFAULT JUDGMENT AGAINST DEFENDANTS
(Dkt. No. 78)

I.   INTRODUCTION

This diversity action arose from an alleged contract for the sale of camera systems that were paid for but never delivered.  Plaintiffs System Technologies Resources, Inc. ("STR"), and Information Civilize Systems for Technologies - FZE  (collectively, "Plaintiffs") brought this eleven-count suit against Defendants United Vision Solutions, LLC ("UVS"), United Vision Security Systems, LLC ("UVSS"),[1] and Khaled Shalaby ("Shalaby") (collectively,

---

[1] UVSS is alleged to be a sham entity.  Under Massachusetts law, "[i]n order to form a limited liability company, one or more authorized persons must execute a certificate of organization," and the certificate must be "filed in the office of the state secretary."  Mass. Gen. Laws ch. 156C, § 12(a); *Butler v. Moore*, Civ. No. 10-10207-FDS, 2015 WL 1409676, at *69 (D. Mass. Mar. 26, 2015) (finding that, although the operating agreement for a limited liability company was signed in April 2002, the company was not created for legal purposes until September 2002 when the parties filed the certificate of organization with the Massachusetts Secretary of State).  Accepting the allegations in the complaint as true, UVSS is nothing more than a fictitious on-line creation holding itself out as a business entity through which Shalaby may be conducting, or attempting to conduct, business.

1

"Defendants") seeking to recover more than $2,000,000 in damages, including multiple damages and fees and costs. Before the court is Plaintiffs' motion for default judgment as to all Defendants (Dkt. No. 78). Defendants have neither responded to this suit nor to this motion.

Plaintiffs' motion for a default judgment was referred to me for a report and recommendation by presiding District Judge Mark G. Mastroianni (Dkt. No. 82). *See* 28 U.S.C. § 636(b)(1)(B). By their motion, Plaintiffs seek a default judgment in the principal amount of $2,641,350 in compensatory damages against Defendants, as well as attorneys' fees and costs in the amount of $46,450.75 (Dkt. No. 31 ¶¶ 9, 10 at 2-3) and exemplary damages in an amount equal to the compensatory damages (Dkt. No. 29 at 3). For the reasons set forth below, the court recommends that Plaintiffs' motion for a default judgment be granted and that judgment enter in the amount of $2,012,000, exclusive of costs and attorneys' fees and interest, to which Plaintiffs also are entitled.

II. RELEVANT PROCEDURAL BACKGROUND

Plaintiffs filed suit on August 04, 2016 and, on August 30, 2016, filed proof that the summonses were served on August 19, 2016 on Defendant Shalaby (personally) and on UVS through Shalaby as registered agent for UVS (Dkt. Nos. 8, 9). Neither defendant filed an answer or responsive pleading. The clerk entered a notice of default as to Shalaby and UVS on September 19, 2016 (Dkt. No. 13). On March 23, 2017, Plaintiffs filed an amended complaint (Dkt. No. 20), naming UVSS, which was alleged to be either a new name for UVS or a successor company to UVS. There is no filing with the Massachusetts Secretary of State for UVSS (Dkt. No. 18 at 2-3). Plaintiffs filed proof that the three summonses issued in connection with the amended complaint were served on March 28, 2017 in-hand on Shalaby (Dkt. Nos. 22, 23, 24). None of the defendants filed an appearance or a responsive pleading. On April 24, 2017,

Plaintiffs moved for entry of a notice of default (Dkt. No. 25).  On April 28, 2017, the clerk entered a notice of default as to all named defendants (Dkt. No. 28).

Plaintiffs moved for a default judgment as to all Defendants on November 16, 2017 (Dkt. No. 29).  The court heard argument on the motion on January 11, 2018 (Dkt. No. 36).  During the hearing, the court asked about the basis for subject matter jurisdiction, noting the absence of allegations as to the citizenship of the members of UVS, a limited liability company (Dkt. No. 43 at 3).  *See Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51, 54 (1st Cir. 2006) (recognizing that every circuit that has considered the issue has concluded that the citizenship of an unincorporated entity such as a limited liability company is determined by the citizenship of all of its members).  The court recommended that Plaintiffs' motion for a default judgment be denied without prejudice until such time as Plaintiffs could demonstrate the existence of diversity jurisdiction (Dkt. No. 43).  The district court adopted the recommendation (Dkt. No. 47).

After some difficulty, Plaintiffs deposed Shalaby and his wife, Joyce Shalaby, on the issue of the identity or identities of the member or members of UVS at the time of filing.[2]  On

---

[2] On March 21, 2018, Plaintiffs moved for an order of contempt against Defendants and Ms. Shalaby for failure to comply with the deposition subpoenas *duces tecum* served on them (Dkt. No. 40).  On June 18, 2018, this court recommended that the motion be denied and that "Defendants and [Ms.] Shalaby be ordered to appear and fully comply with the subpoenas" (Dkt. No. 43 at 8).  This recommendation was adopted on July 5, 2018 (Dkt. No. 47).

On September 20, 2018, Plaintiffs renewed their motion for contempt against Shalaby and Ms. Shalaby for failure to comply with the court's August 15, 2018 Order (Dkt. No. 49), which directed Defendants and Ms. Shalaby to produce some responsive documents and to appear and testify (Dkt. No. 53).  On February 4, 2019, the court allowed this motion in part and, on February 25, 2019, Shalaby and Ms. Shalaby were arrested and brought before the court for a contempt hearing (Dkt. Nos. 74, 75, 76).  Shalaby and Ms. Shalaby "agree[d] to be deposed immediately following [the] hearing … [and the] Court permit[ted] [their] release upon satisfaction of [their] deposition obligation" (Dkt. No. 74).  Shalaby and Ms. Shalaby testified

April 16, 2019, a basis for subject matter jurisdiction having been established by the testimony from Shalaby and Ms. Shalaby, Plaintiffs renewed their motion for default judgment (Dkt. No. 78).[3]

### III. DISCUSSION

1. Liability

In view of Defendants' failure to appear and answer, the facts alleged in the amended complaint are taken to be true. *See Ortiz-Gonzalez v. Fonovisa,* 277 F.3d 59, 62-63 (1st Cir. 2002). According to the amended complaint (Dkt. No. 20), around December 2013, the parties entered into business discussions about the purchase of camera security systems (Am. Compl. ¶ 14 at 3). Defendants represented that, within a fifteen-week period, they could purchase the necessary components, build the system, integrate the software, and have the camera systems ready to ship (Am. Compl. ¶¶ 15, 16 at 3-4). On or around April 1, 2014, UVS agreed to "acquire, manufacture, assemble, test, qualify and export and deliver three fully functional camera systems (with components and documentation) to the Iraqi Ministry of Oil," for a price of $375,000 (Am. Compl. ¶ 19 at 4). On or around April 15, 2014, UVS agreed to "acquire, manufacture, assemble, test, qualify and then export and deliver 24 fully functional camera systems (with components and documentation) to the Iraqi Ministry of Water Resources," for a price of $1,002,150 (Am. Compl. ¶ 20 at 4). On or around April 22, 2015, UVS agreed to "acquire, manufacture, assemble, test, qualify and then export and deliver eight fully functional camera systems (with components and documentation) to the Iraqi Ministry of Oil," for a price

---

that they had been the only members of UVS since its creation. The Shalabys were domiciled in Massachusetts when the suit was filed.

[3] The court has ruled separately on a second motion filed by Plaintiffs to compel additional discovery from Shalaby and Ms. Shalaby concerning UVS (Dkt. No. 79).

of $320,000 (Am. Compl. ¶ 21 at 4-5). Plaintiffs contracted with Defendants for the assembly of these systems (Am. Compl. ¶ 18 at 4).

While the invoices called for partial payment before delivery of the systems, Plaintiffs represent that they paid the entire purchase price prior to delivery (Am. Compl. ¶ 25 at 5). As the project fell further and further behind schedule, Defendants demanded additional payments above the agreed-upon price, and Plaintiffs made those additional payments (Am. Compl. ¶ 31 at 7). At one point, Defendants demanded additional advance payments and threatened to sell the camera systems and their component parts to third parties or to file for bankruptcy if Plaintiffs did not make payments above the agreed-upon price (Am. Compl. ¶ 30 at 6). When Defendants finally shipped the cameras systems, they were nonfunctional (Am. Compl. ¶ 36 at 7-8). Plaintiffs paid $1,006,000 to Defendants although Defendants never delivered "a single, fully qualified, complete, fully functional camera system" (Am. Compl. ¶ 41 at 8). Plaintiffs further claim to have faced contractual penalties related to the projects and the loss of other business opportunities because of Defendants' failure to perform (Am. Compl. ¶ 43 at 9).

Plaintiffs rely primarily on their breach of contract claims as a basis for their claims for compensatory damages or restitution, as well as lost profits and costs incurred to mitigate harm (Dkt. No. 30 at 13-16). Based on their claims brought pursuant to Massachusetts General Laws ch. 93A, §§ 2 and 11 ("Chapter 93A"), Plaintiffs seek multiple damages and attorneys' fees (Dkt. No. 30 at 16-17). Accepting the facts alleged as true, those facts sufficiently support Plaintiffs' claims for breach of contract. Plaintiffs agreed to pay Defendants for the construction of certain camera systems, and, even after substantial advance payments, Defendants failed to deliver or delivered nonfunctional systems. *Cf. Auctus Fund, LLC v. ERHC Energy, Inc.*, Civ. Action No. 18-cv-10216-ADB, 2019 WL 1316749, at *2 (D. Mass. March 21, 2019). Plaintiffs may recover

for the benefit of their bargain or they may recover restitution damages. *Fecteau Benefits Grp., Inc. v. Knox*, 890 N.E.2d 138, 143 (Mass. App. Ct. 2008). Additionally, Plaintiffs may be entitled to lost profits and other losses that are reasonably foreseeable. *See DPJ Co. Ltd. P'ship v. FDIC*, 30 F.3d 247, 249 (1st Cir. 1994) ("Subject to various limitations, lost profits and opportunities are sometimes recovered under such a 'benefit of the bargain' calculation."); *see also* Mass. Gen. Laws ch. 106, § 2-715 (providing that, pursuant to the Uniform Commercial Code, a buyer may recover incidental and consequential damages resulting from the seller's breach).

The complaint also states a claim for violation of Chapter 93A. Plaintiffs claim that Defendants threatened that, if Plaintiffs did not pay amounts beyond those required by the parties' agreements, Defendants would sell the system components to other buyers or declare bankruptcy. Using a breach of contract in this manner as a lever to enhance a party's bargaining power has been held to be a violation of Chapter 93A. *See, e.g., Price Chopper, Inc. v. Consol. Beverages, LLC*, Civil No. 09-10617-FDS, 2011 WL 901817, at *9 (D. Mass. Mar. 11, 2011).

2. <u>Damages</u>

"Compensatory damages … are mandatory; once liability is found, the [factfinder] is required to award compensatory damages in an amount appropriate to compensate the plaintiff[s] for [their] loss." *Smith v. Wade*, 461 U.S. 30, 52 (1983); *Libertad v. Sanchez*, 215 F.3d 206, 208 (1st Cir. 2000) (vacating a district court judgment denying the plaintiffs damages and fees despite the entry of default judgment against the defendant). Nonetheless, while a court should accept as true the well-pleaded factual allegations in the complaint for purposes of establishing a defaulting party's liability, the court "need not accept the moving party's … factual allegations relating to the amount of damages." *Virgin Records Am., Inc. v. Bagan*, Civ. No. 08-4694

(WHW), 2009 WL 2170153, at *2 (D.N.J. July 21, 2009) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

Accepting as true the well-pleaded allegations in the complaint and taking into account the testimony and evidence admitted during the January 11, 2018 hearing, Plaintiffs are entitled to a judgment against Defendants in a principal amount of $1,006,000, which is the amount Plaintiffs represent that they paid to Defendants. The invoice prepared by Defendants adequately supports Plaintiffs' claim for $1,006,000 (Exhibit 5).

The more difficult question is whether Plaintiffs are entitled to a default judgment that includes additional amounts, including $936,850 in lost profits, $658,500 in penalties, other charges Plaintiffs claim were assessed by the Iraqi government because of Plaintiffs' failure to perform, and $40,000 in costs incurred in attempts to mitigate losses (Dkt. No. 29 at 3). "Damages for lost profits are recoverable only when proof is made 'with sufficient certainty.'" *Augat, Inc. v. Aegis, Inc.*, 631 N.E.2d 995, 997–98 (Mass. 1994) (quoting *Jet Spray Cooler, Inc. v. Crampton*, 385 N.E.2d 1349, 1362 (Mass. 1979)). In support of Plaintiffs' claims for lost profits, they rely on the November 15, 2017 affidavit of Thar Casey, President of STR, and testimony of Omar Abdulkarem, Operational Manager for the Middle East for STR, who managed the engineering, operations, and business development for that region. Mr. Casey attested that STR projected a 40% gross margin for each of the three projects that were the subjects of Plaintiffs' agreements with Defendants. (Casey Aff. ¶ 12; Dkt. No. 32 at 4). According to Plaintiffs, STR contracted with its client for the first project at a price of $620,000 and had agreed to pay Defendants $375,000, resulting in a gross profit of $245,000; STR contracted for the second project at a price of $1,499,000 and agreed to pay Defendants $1,002,150, resulting in a gross profit of $496,850; and STR contracted for the third project at a

7

price of $515,000 and agreed to pay Defendants $320,000, resulting in a gross profit of $195,000 (Casey Aff. ¶¶ 11-12, Dkt. No. 32 at 4-5).  Thus, Plaintiff claim their gross profits would have totaled $936,850.[4]  Mr. Casey further stated that STR spent $40,000 attempting to mitigate its damages by agreeing to pay another company $40,000 to look over the system and supply the missing components, with the goal of making the system functional (Casey Aff. ¶ 29, Dkt. No. 32 at 10).  These efforts were unsuccessful.  Mr. Abdulkarem's testimony was consistent with the contents of Mr. Casey's affidavit.

Plaintiffs further argue that they incurred losses attributable to the provisions for nonperformance in STR's contracts with the Iraqi government.  According to Mr. Casey's affidavit and Mr. Abdulkarem's testimony, the contracts with the Iraqi government required STR to post performance bonds of 5% of the contract value, totaling $131,700 (Casey Aff. ¶ 27, Dkt. No. 32 at 9).  The contracts also included penalties for late delivery of up to 20% of the value of the contract, which amounted to $658,500.  Mr. Abdulkarem testified that the performance bonds had been called by the Iraqi government and that the late delivery penalties were deducted from payments to STR due to the delay in delivery of the systems.

In the court's view, Plaintiffs have not met their burden of establishing lost profits, penalties or mitigation costs by a preponderance of the evidence.  Plaintiffs have failed to submit supporting documents showing the amounts in lost profits, penalties, or expenses and they have not explained how they incurred penalties for late delivery by the Iraqi government for security systems when they have alleged that they were unable to deliver functional systems because of

---

[4] Mr. Casey further averred that STR lost future projects with the Iraqi government because of its failure to deliver under the agreements that are the subject of this lawsuit (Casey Aff. ¶ 25, Dkt. No. 32 at 8-9).  Although Plaintiffs offered Mr. Casey's testimony on future lost business opportunities, they have not requested that the court account for these highly speculative alleged losses in the default judgment (Dkt. No. 29 at 3).

Defendants' failure to perform. Supporting documentation should have been available in the form of STR's agreements and correspondence with the Iraqi government, invoices, and bank records. In the absence of such evidence, the court cannot ascertain with "reasonable certainty" that additional damages should be awarded for lost profits, mitigation costs, or penalties.

Plaintiffs seek multiple damages pursuant to Chapter 93A (Dkt. No. 29 at 3). Taking the allegations in the complaint as true, Defendants tried to squeeze additional payments from Plaintiffs by threatening to sell the system components to another buyer or filing for bankruptcy. Such conduct has been held to violate Chapter 93A. *See, e.g., Anthony's Pier Four, Inc. v. HBC Assocs.*, 583 N.E.2d 806, 821 (Mass. 1991). The undersigned therefore recommends that the principal amount of $1,006,000 be doubled, resulting in a default judgment of $2,012,000.[5]

The complaint seeks interest on any damages recovered by Plaintiffs (Am. Compl. ¶ 13 at 21). On this point, the final judgment should provide for prejudgment interest at the prevailing state interest rate from the date of filing through entry of judgment, on the compensatory damage award of $1,006,000 and postjudgment interest at the prevailing federal rate on the entire award from the date of entry of final judgment. *See Meredith Springfield Assocs., Inc. v. Puma Logistics, LLC*, Case No. 17-cv-30035-MGM, 2018 WL 3340370, at *4 (D. Mass. May 7, 2018), *adopted*, 2018 WL 3336531 (D. Mass. July 6, 2018); *see also Trenwick Am. Reinsurance Corp. v. IRC, Inc.,* Civ. Action No. 07cv12160-NG, 2011 WL 2009919, at *1 (D. Mass. May 23, 2011).

---

[5] To the extent Plaintiffs still press a claim for injunctive relief in the form of an order permitting them to enter privately held premises and seize components of the systems Defendants were supposed to build, I recommend that such relief be denied. Plaintiffs have not cited any authority for granting such extraordinary relief, and the court is not aware of any.

Plaintiffs are also entitled to an award of reasonable attorneys' fees and costs. *See Meredith Springfield Assocs., Inc.*, 2018 WL 3340370, at *4. In support of Plaintiffs' request for fees and costs, they submitted an affidavit of counsel which claims a total of $45,607.75 in attorneys' fees and $843.00 in costs. On the basis of the attorney's affidavit alone, the court cannot ascertain whether the amounts claimed by Plaintiffs' counsel are reasonable. S*ee Pizzo v. Gambee*, 810 F. Supp. 2d 345, 347 (D. Mass. 2011). The court recommends that Plaintiffs be allowed to file legal bills in support of their application for fees and costs within four weeks of entry of final judgment.

IV.     CONCLUSION

For the reasons set forth above, I recommend that a default judgment enter in this case in Plaintiffs' favor against all Defendants in the amount of $2,012,000, with interest at 12% per annum running on $1,006,000 of the award through entry and postjudgment interest at the prevailing federal rate running on the entire award from the date of judgment. I recommend that Plaintiffs be permitted to supplement their request for attorneys' fees and costs to permit the court to make a determination on the reasonableness of the application.

Dated: November 21, 2019                    /s/ Katherine A. Robertson
                                            KATHERINE A. ROBERTSON
                                            UNITED STATES MAGISTRATE JUDGE